HUGH O'REILLY et al., as Executors, etc., Appellants, v. THE NEW YORK ELEVATED RAILROAD COMPANY and THE MANHATTAN RAILWAY COMPANY, Respondents.

1. ELEVATED RAILROAD — INJUNCTION — ABSENCE OF ACTUAL DAMAGE. An injunction against the operation of an elevated railroad, constructed in a public street in the city of New York by authority of law, should not be granted at the suit of an abutting owner, on proof of the wrongful appropriation of the appurtenant easements of light, air and access, when the plaintiff fails to show any substantial monetary damage to his property, or loss suffered, by reason of the defendants' acts but it appears that by reason of the presence and operation of the elevated railroad in the street the value of the plaintiff's property has increased and that it has shared equally with all the property in the vicinity in the general increase of values.

2. DENIAL OF INJUNCTION — PROPERTY RIGHTS IN EASEMENTS. The dismissal, on failure to prove substantial monetary damage, of a complaint seeking to enjoin the operation of an elevated street railroad, on the ground of the wrongful appropriation of easements appurtenant to abutting private property, is not open to the objection that the continued tortious acts will eventually give the defendant company title to the property rights wrongfully appropriated, when the judgment states that it is without prejudice to the right of the plaintiff to bring such action as he may thereafter be advised, based upon facts not inconsistent with those therein adjudged.

*Corning* v. *Troy Iron & Nail Factory* (40 N. Y. 191) and *Smith* v. *City of Rochester* (38 Hun, 612), distinguished.

Reported below, 76 Hun, 283.

(Argued January 23, 1896; decided February 18, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made February 23, 1894, which affirmed a judgment in favor of defendants dismissing the complaint entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward W. S. Johnston* for appellants. Proof by the plaintiffs of an absolute money loss by reason of the acts of the defendants in cases of this character is not necessary in order to secure injunctive relief. (*Campbell* v. *Seaman*, 63

N. Y. 568; *R. L.. Co.* v. *S. & P. P. Co.*, 135 N. Y. 209;
*Comer* v. *Mackey*, 73 Hun, 238; *Maitland* v. *M. R. Co.*, 9
Misc. Rep. 616; *Wilson* v. *N. Y. E. R. R. Co.*, 9 Misc.
Rep. 657; *Smith* v. *City of Rochester*, 38 Hun, 614; *Corn-
ing* v. *T. I. & N. Factory*, 40 N. Y. 191; *B. & P. R. R.
Co.* v. *F. B. Church*, 108 U. S. 317; *P. G. Co.* v. *C. G. Co.*,
89 N. Y. 497; *Knox* v. *M. E. R. R. Co.*, 58 Hun, 518; 128
N. Y. 625; *E., etc., Co.* v. *B., etc., R. R. Co.*, 20 Barb. 644;
*Wartman* v. *Swindell*, L. R. [18 App. 45]; *S. R. Co.* v. *A.,
etc., R. R. Co.*, 5 Hill, 175; *Carpenters' Case*, 8 Coke, 432;
*Wheelock* v. *Noonan*, 108 N. Y. 183; *Meyer* v. *Phillips*, 97
N. Y. 485; *Dunsbach* v. *Hollister*, 49 N. Y. 352; *Schuyler*
v. *Curtis*, 40 N. Y. S. R. 289; *Wright* v. *S. B. &
N. Y. R. R. Co.*, 23 N. Y. S. R. 78; *Gifford*
v. *B. Hospital*, 17 N. Y. S. R. 886; *Chrystie* v.
*Shankey*, 12 N. Y. S. R. 658; *Forster* v. *City of Buffalo*,
64 How. Pr. 127; *Caro* v. *M. E. R. Co.*, 14 J. & S. 138;
*Kelk* v. *Pearson*, L. R. [6 Ch.] 809; *Ewell* v. *Greenwood*,
26 Iowa, 377; *Goodson* v. *Richardson*, L. R. [9 Ch. D.] 221;
*Dance* v. *Goldingham*, L. R. [8 Ch. App.] 902; *Jacomb* v.
*Knight*, 3 De G., J. & S. 533; *Wells* v. *Attenbrough*, 24 L.
T. 312; *Bradley* v. *Pharr*, L. R. [19 App.] 647; *Hart* v.
*Buckner*, 54 Fed. Rep. 925.) The finding of the referee,
that the defendant's road was constructed under authority of
law, and that the easements taken are of nominal value, does
not distinguish the case at bar from *Smith* v. *City of Roches-
ter*, or *Corning* v. *Troy Iron & Nail Factory (supra).* (See
*Pappenheim* v. *M. E. R. Co.*, 128 N.Y. 436; *Galway* v. *M. E.
R. Co.*, 128 N. Y. 145; *Thompson* v. *M. R. Co.*, 130 N. Y. 360;
*Eels* v. *A. T. & T. Co.*, 143 N. Y. 139.) The judgment
appealed from cannot be sustained on the ground that the
public convenience or that public policy is involved, because
the form of the injunction can clearly protect the public con-
venience and obviate any question of public policy involved
in the case. An injunction should have been granted. (*Blu-
menthal* v. *N. Y. El. R. R. Co.*, 42 N. Y. S. R. 683; *Glover*
v. *M. R. Co.*, 19 J. & S. 1; *Eno* v. *M. E. R. Co.*, 24 J. & S.

313; *Armstrong* v. *Gilchrist*, 2 Johns. Cas. 424; *Hawley* v. *Cramer*, 4 Cow. 718; *Matthews* v. *D. & H. C. Co.*, 20 Hun, 437; *Corning* v. *T. I. & N. Co.*, 39 Barb. 311; 40 N. Y. 191; *Handly* v. *Watterson*, 19 S. E. Rep. 536; *Gale* v. *Gale*, 15 N. Y. S. R. 644; 1 Story's Eq. Jur. §§ 64, 709; *Miller* v. *McCan*, 7 Paige, 451; *Taylor* v. *Taylor*, 43 N. Y. 578; *Beach* v. *Cook*, 28 N. Y. 508; *Sutherland* v. *Rose*, 47 Barb. 144; *Lynch* v. *R. R. Co.*, 128 N. Y. 68; *M. A. B. Church* v. *O. S. B. Church*, 73 N. Y. 95; *Crump* v. *Ingersoll*, 47 Minn. 179.) The court erred in not granting an injunction unless the defendants within a reasonable time acquired the title to these easements appropriated by them from the plaintiffs. (*Smith* v. *City of Rochester*, 38 Hun, 614; *Goldsmid* v. *Commissioners*, L. R. [1 Eq.] 160, 169; *Foster* v. *City of Buffalo*, 64 How. Pr. 127, 132; *Cornwall* v. *Sachs*, 69 Hun, 283; *Tallman* v. *M. E. R. R. Co.*, 121 N. Y. 125; *Mackey* v. *Scottish Society*, L. R. [10 Eq.] 114; *Stokes* v. *City Offices Co.*, 2 Hem. & M. 650; *Blumenthal* v. *N. Y. El. R. R. Co.* 42 N. Y. S. R. 683; *Stroub* v. *M. R. Co.*, 39 N. Y. S. R. 378; *McElroy* v. *Kansas City*, 21 Fed. Rep. 257; Code Civ. Pro. §§ 3359, 3369, 3371, 3373; *Galway* v. *M. E. R. Co.*, 128 N. Y. 149; *Pond* v. *M. E. R. Co.*, 112 N. Y. 186; *Williams* v. *B. E. R. R. Co.*, 126 N. Y. 100; *Blumenthal* v. *N. Y. El. R. R. Co.*, 137 N. Y. 559.) Plaintiffs were entitled to an injunction to prevent a multiplicity of actions, and to prevent a continuing trespass, which is threatened by the trespassers to be of a perpetual nature, and which will result in the destruction of the plaintiffs' substantial rights of property. (High on Injunc. §§ 852, 860; *Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y. 111; *Johnson* v. *City of Rochester*, 13 Hun, 255; *M. & H. R. R. Co.* v. *Artcher*, 6 Paige, 83; *P. C. Co.* v. *D. & H. C. Co.*, 31 N. Y. 91; *Crooker* v. *Bragg*, 10 Wend. 266; *Meyer* v. *Phillips*, 97 N. Y. 485; *Galway* v. *M. E. R. Co.*, 128 N. Y. 132; *Baron* v. *Korn*, 51 Hun, 401; *Pappenheim* v. *M. E. R. Co.*, 128 N. Y. 436; *Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 434; *Ireland* v. *M. E. R. R. Co.*, 20 J. & S. 451; *Mudge* v. *Salisbury*, 110 N.

Y. 413; *Clowes* v. *S. P. W. Co.*, L. R. [8 Ch.] 125; *Walters* v. *McElroy*, 151 Penn. St. 549; *N. M. Co.* v. *C. & W. M. R. Co.*, 64 Mich. 114; *Wilson* v. *City of Mineral Point*, 39 Wis. 160; *Messenger* v. *M. R. Co.*, 129 N. Y. 502.)

*Reuben Leslie Maynard* for respondents. An equity court is not compelled to issue an injunction which would afflict the defendants with irreparable loss and occasion the public immeasurable inconvenience, solely upon proof of a mere technical trespass which has not resulted in substantial pecuniary damage to the plaintiffs. (*Newman* v. *M. E. R. Co.*, 118 N. Y. 618; *Lynch* v. *M. E. R. Co.*, 129 N. Y. 274; *Shepard* v. *M. R. Co.*, 117 N. Y. 442; *McGean* v. *M. E. R. Co.*, 133 N. Y. 9, 13; *Arnold* v. *Angell*, 62 N. Y. 508; *Brush* v. *M. E. R. Co.*, 44 N. Y. S. R. 111; *Bookman* v. *N. Y. E. R. R. Co.*, 147 N. Y. 304; *Gray* v. *M. E. R. Co.*, 128 N. Y. 499; *Bohm* v. *M. E. R. Co.*, 129 N. Y. 576; *Brush* v. *M. E. R. Co.*, 26 Abb. [N. C.] 73, 80; *Purdy* v. *M. E. R. Co.*, 36 N. Y. S. R. 45; *Becker* v. *M. E. R. Co.*, 131 N. Y. 509; *Story* v. *N. Y. E. R. Co.*, 90 N. Y. 167; *Doyle* v. *M. E. R. Co.*, 136 N. Y. 505, 511; *People* v. *Canal Board*, 55 N. Y. 390, 397; *Genet* v. *D. & H. C. Co.*, 122 N. Y. 505, 529; *Moore* v. *B. E. R. Co.*, 108 N. Y. 98; 3 Pom. Eq. Juris. 1338, 1347; 1 High on Injunctions [3d ed.], 9; *T. & B. R. R. Co.* v. *B. & H. T. R. Co.*, 86 N. Y. 107; *Wheelock* v. *Noonan*, 108 N. Y. 179; *Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y. 97, 111; *Campbell* v. *Seaman*, 63 N. Y. 568, 584, 586; *Sutro* v. *E. R. Co.*, 137 N. Y. 592; *Cockey* v. *Carroll*, 4 Md. Ch. 344; *Atty.-Genl.* v. *Gee*, L. R. [10 Eq.] 136; *Sargent* v. *George*, 56 Vt. 627; *MacLaury* v. *Hart*, 121 N. Y. 636; *Morgan* v. *City of Binghamton*, 102 N. Y. 504; *Thomas* v. *M. M. P. Union*, 121 N. Y. 45; *O'Reilly* v. *N. Y. E. R. R. Co.*, 76 Hun, 283.) In denying the plaintiff's prayer for injunctive relief without costs no error was committed. (*Law* v. *McDonald*, 9 Hun, 26; *Gourley* v. *Campbell*, 66 N. Y. 169, 175; *Provost* v. *Provost*, 70 N. Y. 141; *Taylor* v. *Root*, 48 N. Y. 687; *Morris* v. *Wheeler*, 45 N.

Y. 708 ; *Pratt* v. *Ramsdell*, 16 How. Pr. 59 ; *Barton* v. *Cleveland*, 16 How. Pr. 364 ; *Lossee* v. *Ellis*, 13 Hun, 655 ; *Black* v. *O'Brien*, 23 Hun, 82 ; *Bookman* v. *N. Y. E. R. R. Co.*, 147 N. Y. 304.)

GRAY, J. This is one of the many actions which have been brought against the elevated railway companies in New York city, in which the complainants seek the equitable interference of the court, to restrain the defendants from operating their railway in front of their premises. The demand for this equitable relief, in the present case, relates to property upon Ninth avenue and proceeds upon allegations of interference by the defendants with the plaintiffs' enjoyment of the easements of light, air and access appurtenant to their abutting property. The complaint charges that by reason of the unlawful and injurious acts of the defendants the rental value of the premises has been depreciated, to the extent of $1,000 a year, since the construction of the road, and that the market value thereof has been diminished not less than $10,000 ; wherefore judgment is asked for past damages at the rate of $1,000 a year and that, if the defendants be permitted to continue the operation of their road through Ninth avenue, in front of their premises, it shall be upon condition that they pay for the value of the rights and easements taken, at least, the sum of $10,000, as adequate compensation therefor. The case comes to us upon the judgment roll and without the evidence.

The referee, before whom the trial was had, found all the facts in favor of the plaintiffs, which related to the discomfort and the annoyance incidental to the operation of the defendants' road in the deprivation of the beneficial use and enjoyment of the easements of light, air and access; but he also found it to be the fact, that a general benefit had been produced by the presence of the railway, in which the plaintiffs' property participated, and that the fee value of their property had increased since the construction of the road and was of greater value, to the extent of, at least, $8,000, than at any

time prior to the construction of the railway. He found that
"there has been no disparity between the rate of increase in
value experienced by the property in question and other
property in the vicinity of the line of the elevated road, as
would justify the conclusion that the property in question had
failed to share in the general increase of values which is shown
to have taken place in respect of all real estate in that vicin-
ity." Finding that the plaintiffs had failed to show that the
fee or rental value of the premises had been diminished by
the acts of the defendants, he found the value of the easements
taken, or interfered with, to be the sum of six cents, or nominal
merely. His legal conclusions were, also, favorable to the
plaintiffs, to the extent that he found that their right to an
unimpaired enjoyment of the easements was a substantial
right of property and that the authority of the defendants to
construct and operate their railway did not exempt them from
the same measure of liability for damages, as would attend a
totally unauthorized erection and operation of such a struc-
ture. He even found that, even though no diminution in the
money value of the premises was shown, equity may forbid
the continuance by the defendants of their interference with
the appurtenant easements. His determination, however, was
that, though the plaintiffs had shown title to the property in
question and to the easements of light, air and access appur-
tenant thereto and though the defendants had appropriated
such easements without the sanction of the plaintiffs and
without having made compensation therefor, yet, as the
plaintiffs had failed to show that any substantial loss had
resulted to them, or that other than nominal damages had been
suffered, and because it appeared that to grant the equitable
relief prayed for would involve serious public inconvenience,
judgment should be directed dismissing the complaint; "but
without prejudice to the right of the plaintiffs to bring such
action as they may hereafter be advised, based upon facts not
inconsistent with those herein adjudged."

Thus equitable relief by way of injunction was refused to
the plaintiffs in the court below, upon the ground that, not-

withstanding the defendants had interfered with the easements in the street which were appurtenant to the abutting property and, to the extent of that interference, were *quasi* trespassers upon the plaintiffs' rights, nevertheless, as the benefits resulting to the property from the presence and operation of the elevated railway had greatly enhanced its value, and in equal measure with other property in the vicinity, off of the line of the railroad, the trespass was but technical and only nominal damages of six cents should be allowed.

The contention of the appellants is that proof of a monetary damage is not necessary and that the court may not, and must not, refuse an injunction, where substantial rights of property are invaded ; even if the damage to these property rights cannot be measured by a money standard. We cannot approve of that proposition, as applicable to the present case, without being in conflict with the authority of our previous decisions, as well as with what I believe to be the sound equitable principle. However plausible the argument which is advanced and which rests upon the general notion that the right to the injunction is not to be determined by the extent of the damage, I think that, where the gist of the action is an actual damage suffered by property, it must be proved as a fact in the case ; or, else, the court is at liberty to disregard the mere technical trespass and to refuse its writ of injunction. It is true that the discretion of a court of equity is not to be arbitrarily exercised and that it should be regulated upon grounds that make it judicial ; but there is neither a feature in this case which appeals to the conscience of a court of equity, nor one which compels the application of the equitable principle of interference. There are, of course, the facts that the defendants have come into the street and that they have appropriated certain easements appurtenant to the abutting property, without making compensation therefor, or offering to do so ; but the trespass (to use a term now somewhat commonly applied to these invasions of easements) was merely technically such and caused no actual damage.

45

Equitable relief by way of injunction in cases of trespass may often depend for its award upon the nature of the particular case. In such cases the court must look into them to see if a strong case of actual and irreparable mischief is presented and if the circumstances justify equitable interference. In *Jerome* v. *Ross*, (7 John. Ch. 315), Chancellor KENT considered at some length the practice of granting injunctions in trespass and reached conclusions which are valuable enough to be referred to here. Adverting to the sufficiency, in ordinary cases, of the common-law remedy by action, he says: "I do not think it advisable, upon any principle of justice or policy, to introduce the chancery remedy as its substitute, except in strong and aggravated instances of trespass, which go to the destruction of the inheritance, or where the mischief is remediless." He declares this to be the English doctrine, in conformity with which the court had proceeded, and he says: "I do not know a case in which an injunction has been granted to restrain a trespasser, merely because he was a trespasser, without showing that the property itself was of peculiar value, and could not well admit of due recompense, and would be destroyed by repeated acts of trespass." He sums up the results of the decisions in England and in this state as follows: "These cases all show that, in respect to acts of trespass committed upon land, even by persons in a public trust, under color of law, the court has not interfered by injunction, unless where the trespass was permanent, as well as grievous, or went to destroy the value of the property to the owner. It is not sufficient that the act be simply *per se* a trespass; but it must be a case of mischief and of irreparable ruin to the property, in the character in which it has been enjoyed." In *Kerlin* v. *West* (4 N. J. Eq. 449), the chancellor of New Jersey, citing *Jerome* v. *Ross*, observed: "I am satisfied that the court of chancery should not interfere in a case of naked trespass where there is a full remedy at law." In *T. & B. R. R. Co.* v. *B., H. T. & W. R. Co.*, (86 N. Y. at p. 123), DANFORTH, J., observed that trespass alone will not authorize the interference

of a court of equity, and quotes from Chancellor Kent's opinion in *Jerome* v. *Ross* (*supra*) upon the proposition that where damages are nominal, the court should not assume cognizance of the trespass and lay the interdict of an injunction. In all the cases, which have come before the court in the course of this elevated railway litigation, the complainants, where they have been awarded judgment in their favor, have recovered upon the theory that the defendants' acts were causing an injury through an invasion of certain property rights in the street and, because the trespass was a continuing one, the court interfered to restrain it, in order to prevent irreparable injury and a multiplicity of suits. The action has always been regarded as one for the recovery of damages to the complainant's property, however equitable in its form. Allegations of damage are not necessary, in the sense that the amount which the plaintiff should recover enters into the determination of the right to the equitable relief; but they are necessary in order that the court may determine whether, as alleged and shown, they are of such substance as to warrant the equitable intervention of the court. (*Gray* v. *Manhattan Railway Co.*, 128 N. Y. 499; *Shepard* v. *The Same*, 131 N. Y. 215.) In the former case it was said in the opinion, upon the question of the materiality of the damage: "Unless the court had found it to be substantial, it could, in the exercise of its discretion, have withheld the injunction and left the plaintiff to his remedy at law. An equity court is not bound to issue an injunction, where it will produce great public or private mischief, merely for the purpose of protecting a technical or unsubstantial right." A number of authorities might be adduced in support of that proposition; but it is too evident to require it to be done. In *Hunter* v. *The Manhattan Railway Company* (141 N. Y. 281), it was observed: "The question for the tribunal in each case is, whether, by the construction and operation of the elevated railroad, there has been an intrusion upon the complainant's property rights, to his actual prejudice and damage." In *Doyle* v. *The Metropolitan El. Railway Company* (136 N. Y. 505), it was said: "The proof of

damages was an indispensable element of the plaintiff's case, as it cannot be supposed that a court of equity would entertain jurisdiction to restrain a trespass, that was not shown to have produced any damage or loss to the plaintiff." Quite recently, in *Bookman* v. *N. Y. Elevated Railroad Company* (147 N. Y. 298), it was held that the decree recovered by the plaintiffs was erroneous, in view of the fact that the finding, that the plaintiff's property was injured by the railroad over and above all benefits conferred, was wholly unsupported by the proof. The theory adopted in that case by the court in its decision was, practically, that if benefits only are shown to have been caused, as the result of the construction and operation of the elevated railway, the complainants are without right to equitable relief, as well as not entitled to any award of damages.

In this class of litigation, in which the court has been engaged for a number of years, it not only has never been assumed that a complainant against the elevated railway companies might recover a judgment for equitable relief by way of injunction, upon the mere basis of the unlawful intrusion by the elevated railway companies upon his easements in the street, without proof of actual damage sustained; but it has been frequently held, as shown by the cases above referred to, that there must be proof of a substantial damage to the plaintiff's property to warrant the granting of the equitable relief demanded. It is perfectly true that the defendants are *quasi* trespassers with respect to the plaintiffs' easements in the street in front of their property. But, so far from the trespass being shown to be destructive of the value of their estate, or to have inflicted an irreparable injury, the proof is that the value of the property has been greatly enhanced and that it has shared equally in the general rise of value. Therefore, the only ground for the claim of the plaintiffs, that they are entitled to equitable relief, is in the mere fact that the defendants have invaded their rights in the public street, without their consent and without having first condemned the same by an exercise of the right of eminent domain. It must

be borne in mind, however, that the defendants, in occupying the street with their structure and in operating a railroad thereupon, were carrying out the provisions of their charter and were subserving the public interest and convenience; as all corporations of a public, or *quasi* public, nature are presumed to do. I do not mean to say, because they are in the street by authority of law, that that protects them against the consequences of their acts, when in invasion of those private rights which are secured to property owners. But it seems to me to be perfectly clear that the court, when appealed to by the property owner to enjoin the operation by the corporation of its franchises, upon the ground that certain easements have been invaded, will consider the fact that the corporation is there for the public convenience and is executing a *quasi* public work, and, if it finds that no injury is in truth inflicted and that the property owner has suffered no actual damage, it may and should refuse to grant the relief prayed for. A court of equity has a certain latitude in the exercise of its great power and under no authority or rule, with which I am acquainted, is it compelled to grant an injunction in a case like the present one; which belongs to a peculiar class and is governed by a doctrine of recent growth in the courts. The court recognizes the fact that the defendants had the right to appropriate the street easements by condemnation proceedings and, hence, when appealed to, to enjoin them from operating their franchises, it looks into the question of the substantial nature of the damage alleged to have been done to the property, or of the loss suffered by the owner. If it is found to be such, then the court proceeds in the matter as though the proceeding was one to condemn to the defendants' uses the property appropriated, and, having ascertained the value of the property, it suspends the decree, which it finds the plaintiff is entitled to to restrain the continuance of the defendants' acts, for a sufficient period within which to permit the defendants to acquire the right to appropriate the easements through a conveyance, as a condition of avoiding the enforcement of the decree. The proceedings, by which the court

ascertains and fixes the damages done to the abutting property in the deprivation of easements, are, in fact, but a substitute for condemnation proceedings. If the plaintiffs fail to establish that substantial injury had been inflicted upon their property, a decree enjoining the operation of the railroad would be unwarranted. One of the very grounds, and a main one, upon which equity proceeds in granting relief, by way of injunction against the unlawful acts of the defendants, would have been wanting if no actual and irreparable damage were shown.

I have not overlooked the many authorities to which the appellants' counsel has called attention; but I think it quite unnecessary to review them. There may be some embarrassment in reconciling all that has been decided in the courts, with respect to the practice of granting injunctions in trespass. But that embarrassment seems to arise from the difficulty of applying the principle of equitable interference to the differing circumstances of the cases. The case of *Corning* v. *Troy Iron & Nail Factory* (40 N. Y. 191), relied upon by the appellants, was an action to obtain a perpetual injunction, restraining the defendant from diverting the waters of a stream along the lands of the plaintiffs, and the question being as to the legal rights of the parties, it was held that the defendant had acquired no right to divert the water. The dispute, in fact, was over the title to the stream and whether the defendant had acquired any rights as against the plaintiffs and their grantors. There Judge WOODRUFF in his opinion observed: " If it was clear that the restoration of the water was of no value to them, the case would not call for equitable interference. We cannot, however, say that the case so stands upon the evidence." So the case of *Smith* v. *The City of Rochester* (38 Hun, 612), was one of an action brought to restrain the diversion of the waters of a lake by a municipal corporation; by which plaintiff's riparian rights upon a stream were violated. The defendant, acting in pursuance of an act of the legislature, for the purpose of supplying its citizens with water, was drawing off the waters of the lake through an iron pipe. Without commenting upon the

opinion which prevailed in that case, it is sufficient to observe that the circumstances were not such as to make it an authority in point here.   It may also be repeated, as a pertinent observation, in connection with that and other cases, that the defendants here were in the street by direct authority of law; although, with respect to private rights in the street not taken by eminent domain, they may have been *quasi* trespassers. In other words, the defendants were rightfully and lawfully in the public street; but, in so far as they had failed to make compensation for any damages suffered by abutting property owners, they were at fault and, therefore, liable in an action at law to respond in damages to the abutting owner; or were subject, in an equitable action, to be enjoined with respect to the operation of their franchises, unless compensation was made to the abutting owner for the ascertained damages.

The suggestion by the appellants' counsel, that a reason exists for the granting of an injunction, even in the absence of any proof of damage to the property measured by a monetary standard, in the fact that the continued tortious acts will eventually give to the defendants title to the property rights which they have wrongfully appropriated, is met, in this case, by the form of the decree.   It is "without prejudice to the right of the plaintiffs to bring such action as they may hereafter be advised, based upon facts not inconsistent with those herein adjudged."   This leaves it entirely open to them in the future, and before the defendants could acquire any adverse rights, if they are able to prove any actual damage or loss, to commence an action against the defendants and to obtain such relief at law or in equity as the case shall warrant.

Without continuing further the discussion, it is sufficient to say, in conclusion, that we do not feel compelled by authority, nor upon principle, to hold that the court must grant relief by way of injunction in a case where the plaintiffs are unable to show any actual damage to their property, or loss suffered, by reason of the defendants' acts, and in the face of the fact that, by reason of the presence and operation of the elevated railroad in the street, the value of their property has greatly

increased and that it has shared equally with all the property in the vicinity in the general increase of values which has taken place.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.